NEW ORLEANS, M. & C. R. CO. v. NEW ORLEANS.

[See 14 Fed. 373.]

NEW ORLEANS, M. & T. R. CO. (AMES v.). See Case No. 329.

NEW ORLEANS, M. & T. R. CO. (MORGAN v.). See Case No. 9,804.

NEW ORLEANS, M. & T. R. CO. (SOUTH-ERN & A. TEL. CO. v.). See Case No. 13,185.

NEW ORLEANS MUT. INS. ASS'N (LEVI v.). See Case No. 8,290.

## Case No. 10,184.

NEW ORLEANS NAT. BANKING ASS'N v. ADAMS et al.

[3 Woods, 21; 2 Nat. Bank Cas. (Browne) 207.][1]

Circuit Court, D. Louisiana. Nov. Term, 1876.

ERASURE OF MORTGAGE IN LOUISIANA — RULE — RES JUDICATA — JURISDICTION OF FEDERAL COURTS—NATIONAL BANK CASES — ACT FEB. 18, 1875.

1. The act of congress of February 18, 1875 (18 Stat. 320), which is incorporated in section 5198, Rev. St., does not confer exclusive jurisdiction upon the courts of the United States to try the actions therein referred to.

[Cited in Continental Nat. Bank v. Folsom (Ga.) 3 S. E. 272.]

2. Under the jurisprudence of Louisiana the proceeding to cause the erasure of a mortgage is properly instituted in the proper court of the parish wherein the mortgaged premises lie.

3. By the same jurisprudence, a mortgage may be erased in a proceeding by rule.

4. To maintain the plea of res judicata, the judgment must be final; if it is open to appeal, the plea will not hold.

In equity. Heard on bill, plea, replication and testimony.

The bill recited that, on or about February 24th, 1860, the said Bank of New Orleans became the holder and owner of certain promissory notes for the sum of $5,000, made by Robert Tucker and others, payable to the order of Robert Tucker, and by him indorsed; that said notes were secured by mortgage of the same date, which was recorded in the mortgage office of the parish of Lafourche, where the mortgaged property was situate, on the 24th of February, 1860; that on September 4, 1866, the bank brought suit on said

---

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission. 2 Nat. Bank Cas. (Browne) 207, contains only a partial report.]

note against Tucker, the maker, praying for judgment against him, and for a sale of the mortgaged property. In June, 1866, the district·court of the parish of Lafourche rendered judgment in recognition of said bank's right of mortgage for the full amount of said notes; and a writ of fieri facias was issued and the property seized and sold, and adjudicated to one Albert N. Cummings, for the price of about $13,000. On September 7, 1867, Cummings being unable to comply with his bid in cash, it was agreed between him, Tucker, and the Bank of New Orleans, they then being the sole parties interested, that Cummings should be allowed a certain time to pay the said price on the following terms: That he should pay to one Gaubert the sum of ·$1,851, in satisfaction of a judgment he held against Tucker, which was secured by mortgage and vendors' lien on a part of the mortgaged premises; that he should pay one Barnsley $9,400, and the residue, $6,269.50, to the said Bank of New Orleans. It was further agreed that the claims of Barnsley and the Bank of New Orleans were to be secured by mortgage upon the whole of said tract of land, and that the claims of Gaubert and others were entitled to a mortgage preference on the lower three arpents. It was also agreed that the original mortgage and privilege securing said notes and claims of the Bank of New Orleans and Barnsley, as aforesaid recorded in the mortgage office on February 24, 1860, should remain in full force and effect, and the present privileges and mortgages were declared to exist and were recognized by said agreement as operating against said property. All this was done by authentic act duly recorded in the office of the recorder of mortgages for the parish of Lafourche on September 12, 1867. Gaubert's debt had been paid, and the claims of the present complainants and Barnsley were secured under the registry of that agreement. The bill further alleged that the defendants [John I. Adams, Jay L. Adams, William H. Regnaud, and others] claimed a mortgage privilege in preference to complainant, and he prayed that his mortgage claim be recognized as having a priority over all the claims of the defendants, and for a sale under said agreement, treating it as a mortgage.

To this bill a plea was filed by the defendants, wherein they recited that, on July 20, 1875, they being the holders of certain promissory notes secured by mortgage upon the property described in the complainants' bill of complaint, instituted a certain suit or action against Thomas J. Daunis in a court of competent jurisdiction, and obtained from the said court a writ of seizure and sale against said property, to which they were entitled under the laws of Louisiana; that the said writ was issued to the sheriff of the parish of Lafourche, in pursuance of which he proceeded to sell, after all the legal requirements were complied with, and the property was adjudicated to John I. Adams, who was the

last and highest bidder; that the said sheriff thereafter declined to make a title to said property on account of sundry inscriptions of mortgages and privileges, among which were those set up in the bill of complaint; that on October 19, 1875, the defendants appeared before the judge of the Fifteenth judicial district court and obtained a rule nisi against the complainant in this bill and others, as the owners of the inscriptions and mortgages, to show cause why they should not be canceled and erased, that being the proper course of practice in the courts of Louisiana, and that the said court had jurisdiction exclusively over all questions affecting the legality, reality, inscription and effect of all said inscriptions, judgments and mortgages; that upon the hearing of said rule, the complainant was present, and the case was submitted to the court; that on December 18, 1875, judgment was rendered in favor of these defendants and against the complainant in this case, declaring that the mortgages and inscriptions set forth in the present bill of complaint, should be canceled and erased so far as the said property described in the bill of complainant is concerned, finally settling and closing all issues between the complainant and defendants herein, as set up and alleged in said bill; that on December 18, 1875, the judgment was signed by the judge, and no appeal having been taken within the legal delay allowed by the law of Louisiana for an appeal to be taken, the said judgment became final; and that said judgment has the force of res judicata. To this plea replication was filed, and the case, so far as these parties were concerned, was submitted by agreement upon the bill, the plea, the replication and the evidence. It appeared that the judgment upon the rule, which was the basis of the plea of res judicata, was signed on December 18, 1875. It seemed by the record, which was made evidence (being a transcript of record from the Fifteenth judicial district court), that the complainant, who was defendant in the rule, appeared and pleaded various matters against the same, both by way of exception and upon the merits.

J. D. Rouse and Wm. Grant, for complainant.

J. P. Hornor, W. S. Benedict, F. W. Baker, Clay Knoblock. Thos. Allen Clarke, T. L. Bayne, and Henry Renshaw, Jr., for defendants.

BILLINGS. District Judge. It is urged in the first place that the court which rendered this judgment had no jurisdiction; that the complainant could not be sued or proceeded against in a court holding its sessions in the parish of Lafourche, first by reason of the United States statute which provides, by way of amendment to section 5198, "that suits, actions and proceedings against any association under this title, may be had in any circuit, district or territorial court of the United States, held within the district in which said association may be established; or in any state, county or municipal court in the county or city wherein the association is located, having jurisdiction in similar cases." Section 5198, to which this clause is amendatory, provided that actions might be brought against national banks to recover twice the amount of usurious interest. These are the only cases, so far as I can discover, which are expressly authorized by the title 52 with reference to national banks. This amendment does not exclude other forums, and relates only to actions expressly authorized by that title, and this action is not one of them.

Second. That the said court had not jurisdiction over the complainant, by reason of the statutes of the state of Louisiana which regulate the forum for actions. Code Prac. art. 163. In Gravier v. Baron, 4 La. 240, the supreme court of this state says: "Actions to foreclose mortgages, with all the incidental proceedings, are properly brought in the forum where the mortgaged property is situated." The proceeding, therefore, to cause the erasure of these mortgages was in the proper forum.

It is urged in the third place that the court rendering this decree had no jurisdiction, because the procedure was by rule. The rule is in the nature of a petition, and notice of the rule conforms very nearly to the textual provisions of a citation. But I shall consider this objection as if the incidental proceeding had been instituted as an ordinary rule, and the question is whether, according to the laws of Louisiana and the construction given to these laws by the supreme court of this state, mortgages can be erased by rule, as an incident to the foreclosure and sale? The case of Merrick v. McCausland, 24 La. Ann. 256, is conclusive, if this court has to take that decision as a guide.

It is urged that the supreme court of the United States in the case of Marshall v. Knox, 16 Wall. [83 U. S.] 557, have held that such procedure could not be taken by way of a rule. But that case, so far as this point is concerned, simply decided that in bankruptcy proceedings, where the object was to compel a seizing creditor whose claim was for rent, and who had instituted his proceeding in the state court and got possession of the property through the sheriff before the bankruptcy proceeding, to deliver up certain property to the assignee; and where the creditor thus situated had not made himself a party to the bankruptcy proceedings, he could not be brought in by rule, but must be sued in the form of a direct action. But that decision has nothing to do with the correctness of this procedure, which pertains to the proper manner pointed out by the Louisiana Code, for causing mortgages to be erased, and I am necessarily referred to the Louisiana statutes and the decisions of our supreme court. Earlier decisions were against the propriety of the rule, but the last decision on this subject in

Merrick v. McCausland, 24 La. Ann., supra, lays down as correctly stated in the syllabus, that "a judicial mortgage creditor of an inferior rank to that of a conventional mortgage creditor, may proceed by rule against the latter to show cause why his conventional mortgage should not be erased without proceeding by a direct action to set aside the conventional mortgage." It undoubtedly overrules the case of Bank of Louisiana v. Delery, 2 La. Ann. 650. In Leffingwell v. Warren, 2 Black, 603, Mr. Justice Swayne lays down the following propositions: "The construction given to a statute of a state by the highest judicial tribunal of the state, is regarded as part of the state law, and is as binding on the courts of the United States as the text." "If the highest judicial tribunal of the state has adopted new views as to the proper construction of the state statute and reversed its former decision, this court will follow the latest settled adjudications." I consider, then, that it is settled by the supreme court of Louisiana that this procedure might properly be taken by rule.

This disposes of the question presented which involved the jurisdiction of the court, my conclusion being that the court had jurisdiction. The next question is, does the decree present a case of res judicata? Article 2286, Civ. Code, gives a complete definition of what would maintain the plea of res judicatá, so far as the subject matter and the parties are concerned: "The thing demanded must be the same, the demand must be founded upon the same cause of action; the demand must be between the same parties, formed by them against each other in the same quality." I have no difficulty in coming to the conclusion that the cause of action was the same in both cases. The question presented here, and the question presented in the state court, was as to the binding force of the judgment, and the recorded agreement immediately subsequent thereto. The facts recited in the rule, and the issue relied upon in the answer, present the same facts and the same issue as here. The decision of the state court was, in effect, that the sale under the judgment to Cummings extinguished the mortgage note, and that whatever validity the judgment and the recorded agreement had, could only be from the date of inscription, which was subsequent to the mortgage under which Adams, the respondent here, holds. The whole transaction of the extension given to Cummings and the recording of the judgment and agreement was indivisible, and the court of the Fifteenth judicial district decreed in substance that it created no mortgage prior to that of the defendants here. The parties are clearly the same, and appear in the same quality in both proceedings. But not only according to the common law, but under our Code, to maintain the plea of res judicata, the judgment relied upon must be final. Civ. Code, art. 3556, subdiv. 31, declares:

"The thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because an appeal did not lie, or because the time fixed by law for appealing has elapsed, or because it has been confirmed on an appeal." To be sure these definitions are declared to be given with reference to the terms of law implied in the Civil Code, but the courts of Louisiana refer to them and adopt them with reference to all judicial proceedings. In the case of Escurix v. Daboval, 7 La. 575, it was held by Judge Martin that a judgment quashing an execution has not passed in rem judicatum when the matter in dispute is sufficient to authorize an appeal, and when a year has not elapsed from the date of it to the time of the trial when it is offered as evidence to show the writ was properly quashed. The case in the Fifteenth judicial district court was clearly appealable, and a motion for an appeal, according to the record, had been made. It does not appear whether it was ever perfected. The judgment was rendered on December 18, 1875, and this plea was filed in this cause on November 3, 1876. The year within which an appeal could have been taken had not then expired. That the decree appears to have been executed by the actual erasure of the incumbrances from the record does not change the case, for if an appeal has been taken, and the decree should be reversed, the very judgment of reversal by the supreme court would, so far as these parties are concerned, re-instate the mortgages.

If the appeal from the judgment in the state court has not been perfected, the defendant may amend his plea by setting up that fact.

[Upon the final hearing a decree was entered dismissing the bill. This was affirmed upon appeal by the supreme court. 109 U. S. 211, 3 Sup. Ct. 161.]